UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BENJAMIN FRANKLIN MAXEY, JR.

    Petitioner,

-vs-                                        Case Nos.   5:05-cv-120-Oc-10GRJ
                                                                   5:03-cr-30-Oc-10GRJ

UNITED STATES OF AMERICA

    Respondent.
_____/

## **REPORT AND RECOMMENDATION**[1]

This matter is before the Court on the Order of Reference (Doc. 7), which referred to the undersigned, Defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By a Person In Federal Custody. (Doc. 1.)  After the United States filed a response to Defendant's motion (Doc. 5) the Court conducted an evidentiary hearing and, accordingly, this matter is now ripe for decision.[2]  For the reasons discussed below the Petitioner's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct  Sentence is due to be **DENIED**.

## **I. BACKGROUND AND FACTS**

Petitioner was indicted in a one count indictment charging him with distribution of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The Petitioner

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. §636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] The Court appointed counsel to represent the Petitioner at the evidentiary hearing. (Doc. 8.)

entered a guilty plea on November 14, 2003 pursuant to a written plea agreement. The plea agreement contained a waiver of the Petitioner's right to appeal his sentence, other than in several narrow circumstances, none of which apply to this case. On February 17, 2004, Petitioner was sentenced to 151 months of imprisonment. Consistent with the terms of the plea agreement the Petitioner did not file a direct appeal.

On February 28, 2005, the Petitioner filed the instant *pro se* Petition To Vacate, Set Aside of Correct Sentence, claiming that the United States breached the plea agreement by failing to file a motion for downward departure, that his sentence was illegal, and that he received ineffective assistance of counsel. Specifically, Petitioner contends that he received ineffective assistance of counsel because his counsel: (1) failed to file a notice of appeal despite Petitioner's request that his counsel do so, (2) failed to notify Petitioner regarding the distinction between "cocaine base" and "crack" cocaine, and (3) failed to object to the alleged breach of the plea agreement by the United States. Based on these allegations, the Petitioner requests the Court to vacate his sentence and re-sentence him.

The Court set an evidentiary hearing on the limited issue of Defendant's claim of ineffective assistance of counsel concerning his counsel's alleged failure to file a notice of appeal despite his request that his counsel do so. All of the other grounds raised by Defendant can be addressed adequately by reference to matters that appear of record.

At the evidentiary hearing the Defendant testified in his own behalf. The United States presented the testimony of Assistant Federal Public Defender, Rick Carey, Petitioner's trial counsel in the underlying criminal case.

The Petitioner testified that after he was sentenced on February 17, 2004 he

wanted to appeal. According to Petitioner, while at the Marion County Jail, on February 22, 2004 he filled out a form entitled "Inmate Request Form," in which he requested that he be provided with a notice of appeal. The next day, on February 23, 2004, the Petitioner telephoned Mr. Carey and told Mr. Carey that he was "upset about the sentence" and wanted to appeal his case. Petitioner testified that during this telephone conversation Mr. Carey told Petitioner that he had done all he could do for Petitioner particularly in view of the fact that Petitioner received a sentence at the low end of the guideline range. According to Petitioner, Mr. Carey failed to convince Petitioner not to appeal and instead the conversation ended with Mr. Carey telling Petitioner that "if that's what you want, Mr. Maxey, ... that's what I [will[ do." The Petitioner testified that he telephoned Mr. Carey the next day and was told by Mr. Carey that it was "up to" Petitioner whether Mr. Carey would file an appeal. Petitioner contends that he told Mr. Carey in that telephone conversation that he wanted to appeal. Petitioner does not recall whether he ever told Mr. Carey that the did not want to appeal.

On cross examination the Petitioner admoitted that during the telephone conversation with Mr. Carey on February 23, 2004, Mr. Carey explained to Petitioner that he had waived his right to appeal in the written plea agreement. Petitioner further testified that he was hoping to cooperate with the Drug Enforcement Administration so that he could receive a reduction in his sentence. Petitioner testified that he "did not recall" that Mr. Carey told him during the February 23, 2004 telephone call that if Petitioner filed a notice of appeal Petitioner's attempt at cooperation might come to an end.

The United States presented the testimony of Mr. Carey. Mr. Carey is the

Assistant Federal Public Defender responsible for the Ocala Division during the preceding five years. He has been practicing criminal law for approximately twenty-five years and is a highly experienced and seasoned federal practitioner. Between approximately 1980 and 1989 for a couple of years Mr. Carey served as an Assistant State Attorney for the Eleventh Judicial Circuit in Miami and then after that he served as an Assistant State Attorney in Ocala until approximately 1989. In 1989 Mr. Carey was appointed as an Assistant United States Attorney in the Southern District of Florida where he served in the Miami office until August of 2000 when he was appointed as an Assistant Federal Public Defender in the Middle District of Florida, stationed in Ocala.

According to Mr. Carey, the case against the Petitioner in the underlying criminal case was very strong. The evidence consisted of a "broad daylight buy" of crack cocaine in which Petitioner was captured on videotape selling a small quantity of crack cocaine to an undercover police officer. Mr. Carey recommended that the Petitioner plead guilty to one count of distribution to get the benefit of a three point reduction in the sentencing guideline and attempt to obtain a recommendation from the Government for a low end sentence. Mr. Carey told the Defendant the only way to get a sentence under the recommended guideline range was to assist law enforcement in the prosecution of other like offenses. Subsequently, the Petitioner executed a written plea agreement. According to Mr. Carey, when he met with Petitioner to review the proposed plea agreement, he discussed with Petitioner the substantial cooperation and waiver of appeal provisions.

Mr. Carey was never provided with the document entitled "Inmate Request Form" that Petitioner filled out on February 22, 2004 at the Marion County Jail. It is Mr. Carey's

customary practice as an Assistant Federal Public Defender to maintain a phone log book of every telephone call with anybody concerning one of his clients. Mr. Carey makes a notation of the conversation in sufficient detail so that he can later reconstruct what was discussed. Further, in those instances in which the telephone call is with the client, it is Mr. Carey's customary practice to make a notation with a red star next to the entry to denote that he actually communicated with the client.

As evidenced by Mr. Carey's phone log, he had a telephone conversation with the Petitioner on February 23, 2004 at 9:00 in the morning. Mr. Carey testified that he discussed with Petitioner during that conversation Petitioner's right of appeal and told the Petitioner he would "do whatever he [Petitioner] wishes for him [Mr. Carey] to do." The journal entry for that date reads "Defendant wants to appeal. I told him, there's nothing to appeal." Mr. Carey further explained that he told Petitioner that if he wanted to appeal he did not believe Petitioner would "receive any relief from the appellate court" because in Mr. Carey's opinion the District Judge did not make any mistakes, particularly in view of the fact that the Petitioner had received a low end sentence. Mr. Carey went on to advise the Petitioner in the February 23, 2004 telephone conversation of the effect of the waiver of appeal and that if Petitioner went ahead and filed an appeal, the Government would most likely move to dismiss the appeal based upon the waiver language, which the Eleventh Circuit would routinely grant predicated upon the waiver. Mr. Cary told Petitioner that if he elected to appeal he might not be able to cooperate, which was the only realistic avenue of reducing his sentence. Rather than making a final decision in that telephone conversation, Mr. Carey told Petitioner to call him the next day to let Mr. Carey know Petitioner's final decision as to how to proceed.

Mr. Carey testified that the following day, February 24, 2004, Petitioner telephoned him at 8:03 in the morning and advised Mr. Carey that the Petitioner had decided not to appeal. The journal entry in Mr. Carey's telephone log for February 24, 2004 reads: "Defendant doesn't want to appeal." According to Mr. Carey, Petitioner apologized for requesting an appeal, and told Mr. Carey that Petitioner realized he "doesn't have anything on appeal" and, therefore, Petitioner wanted to further assist law enforcement and did not want to go ahead and take the appeal.

## II. LEGAL ANALYSIS

### A. Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are subject to the two-prong analysis set out by the Supreme Court in Strickland v. Washington.[3] To make out a successful claim, Petitioner must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.[4] The Court will first address Petitioner's claims of ineffective assistance as to the failure to file a notice of appeal and then will briefly address Petitioner's other two grounds of ineffective assistance.

#### 1. Alleged Failure to File a Notice of Appeal

Although the right to appeal is not necessarily a constitutional right, there is little question that failure to pursue an appeal results in the denial of a proceeding altogether, thus implicating a denial of due process.[5]

---

[3] 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[4] *Id.* at 687, 104 S.Ct. at 2064.

[5] Martinez v. Court of Appeal of California, 528 U.S. 152, 120 S.Ct. 684 (2000).

In examining whether there is defective performance by counsel under the first prong of *Strickland* - where the claim of ineffective assistance of counsel, as here, is premised on the failure to file an appeal - the inquiry begins with the question of whether counsel consulted with the defendant about an appeal.[6] If counsel has discussed with the defendant the advantages and disadvantages of taking an appeal, and made a reasonable effort to discover the defendant's wishes, counsel performed in a professionally unreasonable manner only if counsel failed to follow the defendant's express instructions to file an appeal.[7] If it is determined that "counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance."[8] However, "counsel only has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[9]

Based on the evidence presented the Court determines that Petitioner has failed to show deficient performance by Mr. Carey because Mr. Carey "consulted" with the Petitioner and the weight of the evidence does not show Mr. Carey failed to follow the

---

[6] Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029 (2000).

[7] *Id.* at 528 U.S. 478, 120 S.Ct. 1035.

[8] *Id.*

[9] *Id.* at 528 U.S. 480, 120 S.Ct. 1036.

express instructions of the Petitioner to file an appeal.

Mr. Carey expressly testified that during the February 23, 2004 telephone conversation he discussed with the Petitioner the waiver of the Petitioner's right to appeal his sentence, and advised him that he had waived his right to appeal other than in very limited circumstances. Further, Mr. Carey told Petitioner that he did not believe there were any errors made by the District Judge at sentencing and that if Petitioner filed an appeal there was a strong likelihood that the appeal would be dismissed because of the broad waiver in the written plea agreement of Petitioner's right to appeal his sentence. Consequently, Petitioner was made well aware of the disadvantages of pursuing an appeal and thus the Court concludes that counsel "consulted" with the Defendant as explained in *Flores-Ortega*.[10]

Having found that Mr. Carey consulted with the Petitioner, the only remaining way the Petitioner can prove that counsel's performance was deficient is by establishing that Mr. Carey failed to follow Petitioner's express instructions. On this issue the evidence presented at the hearing was conflicting. Petitioner testified that he told Mr. Carey to appeal during the February 23, 2004 telephone conversation and that when he telephoned Mr. Carey the next day he also told Mr. Carey to file an appeal. In contrast to Petitioner's testimony that lacked any detail, Mr. Carey testified that on February 23, 2004 he discussed the disadvantages of an appeal with the Petitioner and told the Petitioner to telephone Mr. Carey the next day with his final decision. While the instructions from Petitioner on February 23, 2004 as to whether to appeal could be

---

[10] *Id.* 528 U.S. 478("We employ the term 'consult' to convey a specific meaning –advising the defendant about the advantages and disadvantages of taking an appeal ...").

viewed as ambiguous, there was no ambiguity in the February 24, 2004 telephone conversation. Mr. Carey specifically testified that on February 24, 2004 Petitioner telephoned him and told Mr. Carey that Petitioner had decided he did not want to appeal but instead was going to attempt to assist law enforcement in an effort to reduce his sentence. Notably, Mr. Carey's detailed account of the telephone conversation on February 24, 2004 is confirmed by the entry in Mr. Carey's telephone log in which Mr. Carey noted that Petitioner does not want to appeal. During cross examination when Petitioner was asked whether he had told Mr. Carey not to file an appeal, Petitioner did not deny that he had made the statement but merely stated that he did not recall. Accordingly, Petitioner's testimony lacks any indicia of credibility when viewed against Mr. Carey's detailed testimony, which is further confirmed by the telephone log entry in Mr. Carey's telephone book.

Lastly, to be sure, after the February 24, 2004 telephone conversation there was no evidence produced by Petitioner that he telephoned or even wrote to Mr. Carey to inquire as to the status of the alleged appeal between that date and more than one year later when the instant § 2255 petition was filed. Had Petitioner instructed his counsel to file an appeal, simple logic dictates that he would have contacted Mr. Carey at some point to determine the status of his appeal.

In sum, Defendant's unsupported statement that he instructed Mr. Carey to file an appeal during the February 24, 2004 telephone conversation is inconsistent with the notation in Mr. Carey's log book and Mr. Carey's detailed testimony concerning his discussion with the Petitioner concerning whether Petitioner should file an appeal.

Accordingly, for these reasons the Court concludes that the Petitioner has failed

9

to establish deficient performance by his counsel under the performance prong of *Strickland* and, therefore, Petitioner's motion to vacate his judgment of conviction on this ground is due to be denied.[11]

### 2. **Failure To Advise of Distinction Between "Cocaine Base" And "Crack Cocaine"**

As a threshold consideration, Petitioner's claim of ineffective assistance as it relates to sentencing issues has been waived because the Petitioner executed a waiver of appeal as part of the plea agreement in this case. Claims of ineffective assistance of counsel relating to sentencing are waived and survive only if counsel's performance directly affects the validity of the plea itself.[12]

However, even if Petitioner's claim has not been waived there is no merit to this argument. Cocaine base and crack cocaine are the same substance under the sentencing guidelines.[13] Indeed, Petitioner stipulated to the drug type and quantity in this case as part of the plea agreement.[14] Accordingly, there is no merit to Petitioner's argument that his counsel was ineffective for failing to advise him of the distinction

---

[11] Even if Petitioner was able to establish ineffective assistance of counsel with regard to the failure to file an appeal the remedy is simply to vacate the judgment of conviction so that the Petitioner can then file a timely appeal. As previously mentioned because the Petitioner has waived his right to appeal his appeal would be dismissed summarily based on his waiver.

[12] Williams, 396 F.3d 1340; *see also,* United States v. White, 307 F.3d 336, 343 (5th Cir. 2002); Davila v. United States, 258 F.3d 448, 451 (6th Cir. 2001)(reviewing only claims of ineffective assistance attacking the validity of the waiver itself); DeRoo v. United States, 223 F.3d 919, 923-24 (8th Cir. 2000); United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001), *cert denied*, 122 S.Ct. 821 (2002); Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000), *cert denied,* 531 U.S. 1175 (2001); United States v. Djelevic, 161 F.3d 104, 107 (2nd Cir. 1998)(if the complaint underlying the ineffective assistance claim was waived by a defendant's plea agreement, then the ineffective assistance claim was also waived).

[13] USSG 2D1.1 note (D)("Cocaine base," for the purposes of this guideline, means "crack.")

[14] Doc. 23, ¶6.

between "cocaine base" and "crack cocaine."

### 3. Failure To Object To Breach of Plea Agreement

Petitioner contends that his attorney should have objected at sentencing that the United States had breached the plea agreement by failing to file a motion recognizing the Petitioner's substantial assistance. This argument has no merit on the record. The plea agreement expressly provides that the determination of whether the defendant received substantial assistance would be made solely by the United States. During the plea colloquy in this case the Petitioner expressly acknowledged to the Court that he understood this fact.[15] Further, at sentencing the United States advised the Court that it would not be filing a motion for substantial assistance at that time. Despite personally addressing the Court at sentencing, the Petitioner did not bring to the Court's attention any substantial assistance he had provided. Moreover, to date, Petitioner has not presented any argument or other information suggesting that he was eligible for substantial assistance. Accordingly, this ground has no factual support in the record and should be denied summarily.

### B. Illegal Sentence

Lastly, in ground two of the petition, Petitioner's asserts that the sentence he received violated due process and his right to trial by jury because he did not receive notice that his sentence would be enhanced based on his status as a career offender and that he had a right to jury trial on the facts supporting the enhancement. Neither of

---

[15] Doc. 43, p. 14.

these arguments have any merit.[16]

First, with regard to notice of the enhancement, the plea agreement expressly states that the Petitioner may qualify as a career offender. Moreover, at the plea colloquy the Court specifically discussed with the Petitioner the impact on his potential sentence if he was considered to be a career offender.[17] Thus, any suggestion that Petitioner did not have notice prior to sentencing (or even prior to his plea) that he might be considered a career offender is belied by the record.

With regard to Petitioner's suggestion that he had a right to trial by jury on his status as a career offender, this argument has no legal support. Even under the principles enunciated in *Apprendi*[18] and *Blakely*,[19] enhancements based upon prior convictions are still not required to be determined by a jury. Because Petitioner's prior convictions were the basis of his enhanced sentence, there was no right to have a jury make this determination.

### III. RECOMMENDATION

In view of the foregoing it is respectfully **RECOMMENDED** that Petitioner's

---

[16] In addition to the fact that there is no factual or legal support for Petitioner's arguments, his right to raise these issues on appeal have been waived because he executed as part of the plea agreement a voluntary waiver of his right to appeal his sentence. Williams v. United States, 396 F.3d 1340.

[17] Doc. 43, pp. 15-16.

[18] Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

[19] Blakely v. Washington, 124 S.Ct. 2531, 2536 (2004).

Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 1) be **DENIED**.

**IN CHAMBERS** at Ocala, Florida this 7th day of November, 2005.

*[signature]*
GARY R. JONES
United States Magistrate Judge

Copies to:
    Honorable Wm. Terrell Hodges
    Senior United States District Judge

    United States (Henry)
    Counsel for Defendant
    Defendant